IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| LONNIE BUTTS, | : |
| Plaintiff, | : |
| VS. | : |
| | :     **7 : 08-CV-07 (HL)** |
| Officer BATES, *et al.*, | : |
| Defendants. | : |

# ORDER AND RECOMMENDATION

Plaintiff, who is proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 on January 15, 2008, raising allegations regarding (1) excessive use of force by Defendant Bates, a correctional officer at Valdosta State Prison (hereinafter "VSP"); (2) deliberate indifference by Defendant Hart, the Warden at VSP, and Defendants Hollis and McCloud, correctional officers at VSP. (Docs. 2, 19). Presently pending in this action are Defendants' Motion for Summary Judgment, and Plaintiff's Motion for Protective Order and Motion for Summary Judgment. (Docs. 73, 71, 75).

*Defendants' Motion for Summary Judgment (Doc. 73)*

**Background**

Defendants filed their Motion for Summary Judgment on May 18, 2011. On May 19, 2011, the Court notified the Plaintiff of the filing of the Defendants' Motion for Summary Judgment, advised him of his obligations under the law, and directed him to respond thereto within thirty (30) days of the date of the Court's Order. (Doc. 74). In response, Plaintiff filed both a Motion for Summary Judgment and a Response to Defendants' Motion for Summary Judgment. (Docs. 75, 77).

In his Complaint, Plaintiff alleges that Defendant Bates subjected Plaintiff to physical abuse, tightening his handcuffs too tight, pushing Plaintiff's head and face against the wall, and grabbing

Plaintiff's genitals. (Doc. 2). Plaintiff maintains that he told Defendant Hollis that the handcuffs were too tight, but Defendant Hollis refused to order that the handcuffs be loosened. (Doc. 19). Also, Plaintiff alleges that Defendant McCloud was present during the alleged assault, yet failed to stop Defendant Bates or help Plaintiff. Plaintiff asserts that Defendant Hart had prior knowledge that Defendant Bates had a history of violent attacks against inmates, yet refused to fire Defendant Bates.

## Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

As the party moving for summary judgment, Defendants have the initial burden to demonstrate that no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying those portions of the record, including pleadings, discovery materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "If a party

fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials –including the facts considered undisputed – show that the movant is entitled to it". Fed R. Civ. P. 56(e)(3).

## Factual Evidence

In arguing that they are entitled to the entry of summary judgment in regard to the Plaintiff's claim of excessive force by Defendant Bates, the Defendants have submitted affidavits from the Defendants and from various prison officials, the Plaintiff's deposition testimony, and portions of the Plaintiff's prison medical records. (Doc. 73). Defendant Bates's affidavit testimony shows that on January 4, 2008, Defendant Bates and Defendant McCloud escorted Plaintiff to and from the showers. (Doc. 73-3, Bates Affidavit, ¶ 4). Defendant Bates states that he did not handcuff Plaintiff too tightly, nor did he physically or sexually assault Plaintiff. (*Id.* at ¶ 5-6).

Defendants' evidence further shows that Plaintiff did not complain to Defendant Hollis that he was handcuffed too tightly, and if he had Defendant Hollis would have checked the handcuffs. (*Id.* at ¶ 5; 73-5, Hollis Affidavit, ¶ 3). Additionally, neither Defendant McCloud nor inmate Willie Collier, Plaintiff's cellmate, witnessed Defendant Bates sexually or physically assault Plaintiff. (Docs. 73-4, McCloud Affidavit, ¶ 6; 73-12, Collier Depo. p. 16). However, after Plaintiff complained that he had been attacked, Defendant McCloud took Plaintiff to medical for use of force examination, which is done any time force is used or alleged to have been used. (Docs. 73-4, McCloud Affidavit, ¶ 7; 73-7, Jackson Affidavit, ¶ 5). Non-party Nurse John Jackson completed a use of force assessment of Plaintiff on January 4, 2008, the day of the alleged assault. (Docs. 73-7, Jackson Affidavit, ¶ 6; 73-9). Nurse Jackson stated that Plaintiff had no visible signs of injuries and was alert and oriented; thus, he did not require any medical treatment. (*Id.*).

In response to the Defendants' summary judgment motion, the Plaintiff has provided a Motion for Summary Judgment and a Response, which includes Plaintiff's affidavit, witness statements, and some medical call slips. (Docs. 75, 77). The record further contains Plaintiff's sworn deposition testimony, submitted by Defendants, with certain sections specifically pointed to and identified by Defendants in support of their summary judgment motion. (Docs. 73-10; 73-11). Although the Plaintiff has neither incorporated this testimony by reference nor pointed to relevant portions of the testimony in responding to Defendants' Motion for Summary Judgment, Rule 56 clearly allows for the Court's consideration of the entire record when ruling on a motion for summary judgment. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The notes explaining the amendment further state that "a court may consider record materials not called to its attention by the parties." *Id.* at hist. n. 2010 Amendments.

The Eleventh Circuit has also recognized that courts must consider the record as a whole in ruling on motions for summary judgment. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) ("[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial") (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) ("[i]n opposing summary judgment, the nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole"). The Court is mindful, as well, of the Plaintiff's *pro se* prisoner status, which the Eleventh Circuit has noted entitles the Plaintiff's pleadings and briefs to a more liberal construction. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990); *see also Keith v. Stewart*, 2006 WL 2298004, n. 1 (N.D. Ga. Aug. 8, 2006) (courts are reluctant to require a *pro se* prisoner to rely on more evidence than his pleadings in response to motions for summary judgment). Thus, the Plaintiff's sworn deposition testimony is properly considered herein as part of the record as

a whole and in opposition to the Defendants' Motion for Summary Judgment.

In his deposition, Plaintiff states that, while preparing to take Plaintiff to the shower, Defendant Bates placed Plaintiff in handcuffs that were so tight they were digging into his skin. (Doc. 73-11, Butts Depo. p. 35, ll. 1-7). On his way to the shower, Plaintiff passed Defendant Hollis and told him the handcuffs were too tight, but Defendant Hollis did not do anything. (*Id.* at p. 35, ll. 7-15). Upon returning Plaintiff to his cell, Defendant Bates shoved Plaintiff against the wall, grabbed him by the back of the head, and pushed Plaintiff's face into the wall. (*Id.* at p. 36, ll. 11-16). Plaintiff further states that Defendant Bates spun Plaintiff around and grabbed Plaintiff's genitals in order to inflict pain. (*Id.* at p. 36, ll. 17-18).

Plaintiff testified that as he was being attacked by Defendant Bates, Defendant McCloud stood in the doorway and watched. (*Id.* at p. 37, ll. 1-2). As a result of the incident, Plaintiff states he received a knot on his forehead and under his left eye, received visible marks and nerve damage to his wrists, swollen and damaged testicles, and blurry vision. (Doc. 19).

## Discussion

**Excessive force**

The Eighth Amendment forbids cruel and unusual punishment, and this prohibition governs "the treatment a prisoner receives in prison and conditions under which he is confined." *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). "[A]nalysis of an Eighth Amendment excessive force claim is contextual and requires that many factors be considered: 'the need for the application of

5

force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.'" *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996) (quoting *Hudson*, 503 U.S. at 5). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1500 (11th Cir. 1985).

To establish a claim for excessive force, the Plaintiff must show that (1) the Defendants acted with a malicious and sadistic purpose to inflict harm and (2) that a more than *de minimis* injury resulted. *Fischer v. Ellegood*, 238 Fed. Appx. 428, 432 (11th Cir. 2007); *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002). However, "[t]he 'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010) (quoting *Hudson*, 503 U.S. at 7). Although the extent of any injury is not alone dispositive of an excessive force case, it is "one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

Defendants contend that Defendant Bates could not have used excessive force because Plaintiff had no injuries. (Doc. 73-2). "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 130 S.Ct. at 1178-1179. "The extent of the injury may . . . provide some indication of the amount of force applied." *Id.* at 1178. If there is no evidence of injury to corroborate the inmate's allegations of excessive force, a motion for summary judgment may be granted in favor of the prison officials. *See Vicks v. Knight*, 380 Fed. Appx. 847, 851 (11th Cir. 2010).

In *Vicks*, the parties' versions of the alleged excessive force greatly differed. 380 Fed. Appx. at 851. To support their version of the incident, the defendants provided personal affidavits, affidavits of other prison officials, and medical records. The inmate provided only his own affidavit. *Id.* Moreover, neither medical professional that examined the plaintiff after the incident could identify any injury to the plaintiff's body to corroborate the allegations. *Id.* The Eleventh Circuit determined that the evidence provided by the defendants, the lack of evidence by the plaintiff, and the showing of no injury to the plaintiff was sufficient to prove no excessive force was used. *Id.* at 852.

Much like *Vicks*, Defendant Bates's version of the events is corroborated by Defendants McCloud and Hollis and eyewitness Willie Collier. Defendant McCloud testified that "Officer Bates did not push [Plaintiff's] face against a wall, nor did he grab or squeeze [Plaintiff's] genitals or otherwise physically or sexually assault [Plaintiff]." (Doc. 73-4, McCloud Affidavit, ¶ 6). Collier stated in his deposition that he only remembers seeing Defendant Bates "put [Plaintiff] up to the wall by the sink[,]" and did not see Defendant Bates place his hands on any part of Plaintiff. (Doc. 73-12, Collier Depo. p. 12, ll. 12-14, p. 14, ll. 12-14). Moreover, Defendant Hollis testified that he does not recall Plaintiff complaining about his handcuffs being too tight, nor did Defendant Hollis see Defendant Bates assault Plaintiff. (Doc. 73-5, Hollis Affidavit, ¶¶ 3, 4).

Most importantly, however, is the fact that the medical records support Defendant Bates's version of the event and contradict Plaintiff's version. Plaintiff states that the alleged incident occurred at approximately 9:00 a.m. (Doc. 2). The affidavit of Nurse Jackson and the medical records show that Plaintiff had no visible injuries at 10:30 a.m., an hour and a half after the alleged excessive use of force. (Docs. 73-7, Jackson Affidavit, ¶ 6; 73-8, Seleska Affidavit, ¶ 6; 73-9). Plaintiff testified that there were visible marks on his wrists; however, the use of force assessment that occurred the same day as the alleged incident showed that there was no injury to his wrists.

7

(Doc. 73-11, Butts Depo. p. 41, l. 22 – p. 42, l. 6; Doc. 73-9). Further, Plaintiff testified that he had a knot on his forehead and under his left eye, and his "private parts" were swollen and painful. (Doc. 73-11, Butts Depo. p. 41, ll. 15-17, 18-19). However, the medical records show that there was no visible injury to Plaintiff's head or genitalia. (Doc. 73-9). Despite Plaintiff's complaints, Nurse Jackson saw no visible injuries, and thus, was not required to administer any medical treatment. (Doc. 73-7, Jackson Affidavit, ¶ 6).

On January 11, 2008, approximately seven (7) days after the alleged incident, Plaintiff was seen by medical for headaches, a knot under his left eye and on his forehead, and wrist and groin pain. (Doc. 73-9). Plaintiff was instructed to increase his water for the mild facial swelling, and to use Tylenol as needed for pain. (Doc. 73-8, Seleska Affidavit, ¶ 7). Additionally, four days later, on January 15, 2008, Plaintiff was seen by medical for complaints of pain in his left eyebrow, right wrist, and testicles. (*Id.* at ¶ 8). Plaintiff was examined and there were no signs of trauma to Plaintiff's face or testicles, and an x-ray was ordered for his wrist. (*Id.*). "The x-ray revealed that there was no evidence of a recent fracture or other significant bony abnormality[,]" but a Tinel test showed Plaintiff was possibly suffering from Carpal Tunnel Syndrome. (*Id.* at ¶ 9). Non-party Nurse Seleska testified that Carpal Tunnel Syndrome is a overuse injury, and is not caused by being handcuffed too tightly. (*Id.*).

It does not appear that the mild facial swelling approximately six (6) days later was the result of an excessive use of force by Defendant Bates. At 10:30 a.m., approximately an hour and a half after the alleged excessive use of force, Plaintiff was seen by a medical professional who observed no sign of injury to Plaintiff. (Docs. 2; 73-9). At that time, there was no indication of bruising or facial swelling. Plaintiff was treated for mild facial swelling on January 11, 2008. However, when Plaintiff was examined on January 15, 2008, there were, once again, no visible signs of injury. Plaintiff was

seen three times in the eleven days that followed the alleged excessive use of force. During that time Plaintiff's only visible injury was mild facial swelling, which occurred a week after the alleged incident and was treated with an increase in water. As the mild facial swelling did not appear until apparently a week after the event, it does not appear that the swelling is related to the alleged use of force. Assuming, *arguendo*, that the facial swelling does relate to the alleged use of force, mild facial swelling is *de minimis* and does not violate Plaintiff's constitutional rights. *See Wilkins*, 130 S.Ct. at 1178 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." (citations omitted)); *Wineston v. Pack*, 2009 WL 3126252 (N.D. Fla. 2009) (finding "a minor contusion to his left forehead with minimal swelling for which he was given Advil for three days" was *de minimis*); *Radford v. Johnson*, 2006 WL 2927578 (M.D. Ga 2006) (finding plaintiff's complaints of a sore shoulder, sore abdomen, and facial swelling were *de minimis* and not sufficient to prove excessive force, when the record showed there was no facial swelling on the day of the alleged use of force and the facial swelling had healed before additional treatment nine (9) days later).

Plaintiff has also alleged that he has suffered permanent injury to his eyes as a result of the alleged use of excessive force. However, Plaintiff's medical records show that Plaintiff did not complain of blurry vision until October 20, 2008, more than nine (9) months after the alleged use of force. (Doc. 73-9). Plaintiff has provided no evidence to show that there is any connection between his complaints of blurry vision and the alleged incident. Based on the lack of corroborating evidence, namely medical records, the Court must conclude that no reasonable jury could determine that Plaintiff's eye injury is a result of the alleged excessive use of force by Defendant Bates. *See Harden v. Roberts*, 2009 WL 3158172, *5 (M.D. Ga. 2009) (finding no genuine question of fact when the plaintiff could not provide evidence to show that his toe injury, which he complained of three months

after the alleged use of force, was related to the use of force).

The medical professionals and medical records show that there was no injury to Plaintiff after the alleged use of excessive force, and Plaintiff has failed to provide evidence that the subsequent injuries were related to the alleged use of excessive force. Therefore, "a reasonable factfinder could not believe that [Plaintiff] suffered any injury, and thus could not reasonably infer that [Defendant] used anything more than a *de minimus* amount of force against [Plaintiff]." *Vicks*, 380 Fed. Appx. at 852.

Plaintiff's version of the alleged assault is contradicted by the Defendants' affidavits and, most importantly, the medical records. There is no genuine issue of material fact for a jury to determine. Accordingly, it is the recommendation of the undersigned that Defendants' Motion for Summary Judgment be **GRANTED** as to Plaintiff's excessive force claim.

**Deliberate indifference**

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The deliberate indifference standard has both an objective and a subjective component. "First, under the 'objective component', a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). Secondly, "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 832. To establish the prison official acted with deliberate indifference to the serious need, the Plaintiff must show that the prison official had "(1) subjective knowledge of a risk of serious harm;

(2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).

*1. Defendant Hart*

Plaintiff maintains that Defendant Hart, the Warden of VSP at the time of the alleged incident, was aware of Defendant Bates's history of violence towards inmates, yet failed to fire him. (Doc. 19). Defendant Hart asserts that he cannot be held vicariously liable for the acts of Defendant Bates.

A supervisor cannot be liable under § 1983 for the unconstitutional acts of his subordinates on the basis of vicarious liability. *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). "A causal connection may be established when: 1) a 'history of widespread abuse' puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." *Mattews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007).

Herein, Plaintiff does not allege that Defendant Hart participated in the alleged constitutional violation. Rather, Plaintiff alleges that Defendant Hart was aware, prior to this alleged incident, that Defendant Bates was known to be violent towards inmates, yet failed to stop him. Plaintiff alleges that Defendant Hart had issued several reprimands to Defendant Bates based on violence towards inmates. (Doc. 19).

Defendant Hart has submitted an affidavit stating that "Officer Joseph Bates has never been

reprimanded nor suffered adverse employment action for assaulting inmates." (Doc. 73-6, Hart Affidavit, ¶ 3).  Further, Defendant Hart states that he has "no personal knowledge of any substantiated instances in which Officer Bates was found to have assaulted an inmate at Valdosta State Prison." (*Id.*).

Plaintiff, on the other hand, submitted one document that shows Defendant Bates was reprimanded by Defendant Hart for spreading rumors about a co-worker.  (Doc. 75-3).  Plaintiff also provided written statements from two inmates stating they provided Defendant Hart with information regarding Defendant Bates's use of force against them.  (*Id.*).  However, the statements do not show that Defendant Bates used excessive force on these two inmates, nor is there any indication that Defendant Hart was aware of any complaints of excessive force against Defendant Bates.  Moreover, in his deposition, Plaintiff testifies that he has no knowledge of what Defendant Hart knew, but merely heard rumors that Defendant Bates had "lots of reprimands". (Doc. 73-11, Butts Depo. p. 48, l. 24 – p. 49, l. 10).  Plaintiff also states that Defendant Hart knew that Defendant Bates was violent towards inmates because Plaintiff told Defendant Hart about the alleged attack after it occurred.  (*Id.* at ll. 10-16).  Plaintiff admits that he did not report anything to Defendant Hart prior to the incident involving Defendant Bates.  (*Id.*).

Plaintiff has failed to provide any evidence that refutes Defendant Hart's evidence, and further, he has admitted that he has no evidence to show Defendant Hart had any subjective knowledge regarding Defendant Bates's alleged violent propensities towards inmates.  As Plaintiff has not provided evidence which creates a genuine issue of material fact regarding the claims against Defendant Hart, it is the recommendation of the undersigned that summary judgment be **GRANTED** in favor of Defendant Hart.

*2. Defendants McCloud and Hollis*

Plaintiff appears to be alleging that Defendants McCloud and Hollis failed to intervene, and thus, were deliberately indifferent.  Plaintiff alleges that he told Defendant Hollis that his handcuffs were too tight, but Defendant Hollis did not respond, and that Defendant McCloud watched while Defendant Bates assaulted Plaintiff. (Doc. 19).

"An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008).  However, if excessive force was not used, an officer has no duty to intervene.  *Crenshaw v. Lister*, 556 F.3d 1283, 1294 (11th Cir. 2009).  Herein, the undersigned has determined that there is no genuine issue of fact as to the excessive force claim against Defendant Bates.  As a reasonable jury could not find that Defendant Bates used excessive force on Plaintiff, no reasonable jury could find that Defendants McCloud and Hollis were deliberately indifferent to a serious risk of harm to Plaintiff by their failure to intervene.  *See Vicks*, 380 Fed. Appx. at 852 (finding that no jury could find that an officer used excessive force on the plaintiff, so no jury could find that the defendant failed to intervene); *McBride v. Rivers*, 170 Fed. Appx. 648, 658 (11th Cir. 2006) (finding defendant could not be liable for failure to intervene when the court determined that no excessive force had been used by other officers).

Plaintiff has failed to show that there is a genuine issue of material fact as to the claim of excessive force.  As no excessive force was used, the claims against Defendants McCloud and Hollis must fail because they had no duty to intervene.  Accordingly, it is the recommendation of the undersigned that summary judgment be **GRANTED** in favor of Defendants McCloud and Hollis.

### Conclusion

Inasmuch as Plaintiff has failed to sufficiently rebut Defendants' summary judgment showing regarding Plaintiff's claims against Defendants Bates, Hart, McCloud, and Hollis, it is the

recommendation of the undersigned that the Defendants' Motion for Summary Judgment be **GRANTED**.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the recommendations contained herein with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

*Plaintiff's Motion for Summary Judgment (Doc. 75)*

Plaintiff filed a Motion for Summary Judgment on June 15, 2011.  However, in his "Motion" Plaintiff merely responds to Defendants' Motion for Summary Judgment, and requests the Court allow Plaintiff to proceed to trial.

"A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact."  *Id.*  The undersigned has considered both Plaintiff's and Defendants' evidence, and has determined that there is no genuine issue of fact regarding the claims against Defendants.  The evidence provided entitles Defendants to summary judgment.  Therefore, it is the recommendation of the undersigned that Plaintiff's Motion for Summary Judgment be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the recommendations contained herein with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

*Motion for Protective Order (Doc. 71)*

Plaintiff filed this Motion requesting the Court file an order denying Defendants the ability to take Plaintiff's deposition.  Plaintiff maintains that he should not be deposed by Defendants because he did not receive proper notice of the deposition, and the deposition was taken outside of the discovery period. On January 28, 2011, the Court reopened discovery after Defendants' Motion to

Dismiss was granted-in-part and denied-in-part, giving all parties until April 4, 2011 to complete discovery. (Doc. 64). Prior to the end of the discovery period, Defendants requested an extension of time to conduct Plaintiff's deposition based on several scheduling conflicts of Defendants' counsel. (Doc. 69). On April 5, 2011, the Court granted Defendants' Motion and gave Defendants until April 18, 2011 to complete Plaintiff's deposition. The Court also directed Plaintiff to comply with the Defendants' deposition notice. (Doc. 70).

Plaintiff signed his Motion on April 4, 2011, which is the day before the Court directed Plaintiff to comply with Defendants' deposition notice. Thus, it appears Plaintiff was not aware of the Court's April 5, 2011 Order prior to filing this Motion. As the Court had granted Defendants' an extension to complete Plaintiff's deposition, Plaintiff's Motion for Protective Order is **DENIED** as moot.

**SO ORDERED AND RECOMMENDED** , this 15th day of August, 2011.

s/ ***THOMAS Q. LANGSTAFF***

**UNITED STATES MAGISTRATE JUDGE**

llf

15